Strafford
No. 2005-263

THE STATE OF NEW HAMPSHIRE

v.

SIDNEY HENDERSON

Argued: March 15, 2006
Opinion Issued: August 22, 2006

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. Following a jury trial, the defendant, Sidney Henderson, was convicted of being a felon in possession of a firearm. *See* RSA 159:3 (2002). On appeal, he contends that the Trial Court (*Mohl*, J.) erred in sentencing him under the minimum mandatory sentencing provision of RSA 651:2, II-g (Supp. 2005). We vacate his sentence and remand to the trial court for resentencing.

The defendant was charged with three counts of simple assault, *see* RSA 631:2-a (1996), and one count of felon in possession of a firearm, *see* RSA 159:3. Following a jury trial, he was acquitted of the assault charges and

convicted of the felon in possession of a firearm charge. At sentencing, the trial court imposed the minimum mandatory sentence established in RSA 651:2, II-g for felony convictions involving "the possession, use or attempted use of a deadly weapon." RSA 651:2, II-g.

On appeal, the defendant first argues that because the charging documents and jury instructions authorized the jury to convict him if it found he had a weapon either in his possession or under his control, he could not be sentenced under RSA 651:2, II-g because possession must be established as an element to permit application of RSA 651:2, II-g. He urges us to consider this argument under our plain error rule. *See* SUP. CT. R. 16-A. Under our rule, we consider the following elements: (1) there must be error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *State v. MacInnes*, 151 N.H. 732, 737 (2005). The State argues that because "there is no settled law that would take this defendant out of the reach of the mandatory minimum sentence imposed by RSA 651:2, II-g under the particular facts of this case," there was no plain error. We disagree.

We review the trial court's interpretation of a statute *de novo*. *Petition of State of N.H. (State v. Campbell)*, 152 N.H. 515, 520 (2005). We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. *Petition of State of N.H.*, 152 N.H. 185, 187 (2005). To do so, we look first to the language of the statute to determine legislative intent. *Id.* When asked to interpret two statutes that deal with similar subject matter, we construe them so that they do not contradict each other and so that they lead to a reasonable result and effectuate the legislative purpose of the statute. *State v. Taylor*, 152 N.H. 719, 720 (2005).

RSA 159:3 provides that a person is guilty of a class B felony if he "[o]wns or has in his possession or under his control, a pistol, revolver or other firearm" and has been convicted of certain classes of felonies. RSA 159:3, I. RSA 159:3 therefore authorizes conviction for "ownership," "possession" or "control."

RSA 651:2, II-g provides:

> If a person is convicted of a felony, an element of which is the possession, use or attempted use of a deadly weapon, and the deadly weapon is a firearm, such person may be sentenced to a maximum sentence of 20 years' imprisonment in lieu of any other sentence prescribed for the crime. The person shall be given a minimum mandatory sentence of not less than 3 years' imprisonment for the first offense and a minimum mandatory sentence of not less than 6 years' imprisonment if such person

has been previously convicted of any state or federal offense for which the maximum penalty provided was imprisonment in excess of one year, and an element of which was the possession, use or attempted use of a firearm. Neither the whole nor any part of the minimum sentence imposed under this paragraph shall be suspended or reduced.

RSA 651:2, II-g imposes a minimum mandatory sentence in certain cases involving the "possession," "use" or "attempted use" of a deadly weapon.

The defendant argues that because the indictment and jury instruction authorized the jury to convict if it found that he had a firearm in his possession or under his control, his conviction is not subject to the minimum mandatory sentence established under RSA 651:2, II-g, because the element of possession was not established.

We have recently construed RSA 159:3 and held that the terms "under his control" and "in his possession" have independent meanings. *Taylor*, 152 N.H. at 721. In *Taylor*, we held that the minimum mandatory sentence established in RSA 651:2, II-g did not apply to a conviction obtained under RSA 159:3, where the indictment alleged only that the defendant had certain firearms under his control. The State contends that the facts in this case are distinguishable from those in *Taylor* "because it is clear that here, the jury could not have found control without finding actual possession."

In this case, the defendant was charged with having a firearm in his possession or under his control. The jury was instructed that to obtain a conviction, the State had to prove that the defendant "owned or had in his possession or under his control a firearm." The State does not appear to contest that the minimum mandatory sentence would apply *only* if the jury found that the defendant possessed the gun; rather, it urges us to review under a harmless error analysis whether the necessary finding was made. The defendant contends that the jury instruction was too broad and that this error is not subject to harmless error analysis. *See State v. Ayer*, 150 N.H. 14, 24 (2003) (discussion of distinction between structural defect and trial error). We construe his argument to be that the instruction given was insufficient to permit imposition of the minimum mandatory sentence, not that it was erroneous for the offense charged.

The legislature has vested in the trial court the ability to adapt sentencing to best meet the constitutional objectives of punishment, rehabilitation and deterrence. *State v. Timmons*, 145 N.H. 149, 151 (2000). Under the general sentencing statutes, *see* RSA ch. 651, the trial court has broad discretion to impose different sentences, suspend sentences or grant probation. *Timmons*, 145 N.H. at 151. Minimum mandatory sentences, however, restrict the sentencing discretion of the trial judge. *See Petition*

*of State of N.H.*, 152 N.H. 185, 191 (2005). Recognizing this constraint, we have previously declined to extend the application of a mandatory sentencing statute where the legislature's intent was not "unmistakably clear." *Id.*

■ The plain language of RSA 651:2, II-g makes clear that it applies when a defendant has been convicted of a felony, an element of which is the possession, use or attempted use of a firearm. *Taylor*, 152 N.H. at 721. Absent a specific finding by the jury that an element of the felony for which it convicted the defendant was possession, use or attempted use of a firearm, we hold that RSA 651:2, II-g is not applicable.

In this case, the jury was instructed that it could convict the defendant if it found that he *owned or possessed or had under his control* a firearm. We cannot know, in light of this jury instruction, whether the offense for which the defendant was actually convicted included the element of possession of a firearm. If the jury found the element of control but did not consider possession, it committed no error; the error would have been in applying the minimum mandatory sentence to a conviction for a felony which may not have included the element of possession, use or attempted use of a firearm. Such an error would not be harmless.

■ Imposition of the minimum mandatory sentence under RSA 651:2, II-g requires that a defendant's felony conviction include the element of possession, use or attempted use of a firearm. Thus, imposition of the minimum mandatory sentence when the trial court could not know whether the defendant's conviction included the necessary element was erroneous.

We further conclude that the four elements of the plain error rule have been met in this case. First, there is error. Second, the error is plainly evident if the language of RSA 651:2, II-g is compared with the language of the indictment and instructions.

For this reason, we disagree with the special concurrence's position that our decisions in *State v. Taylor*, 152 N.H. 719 (2005), and *State v. Emery*, 152 N.H. 783 (2005), were inconsistent. In *Taylor*, the language of RSA 651:2, II-g plainly did not encompass the language of the indictment. In contrast, the answer to the question presented in *Emery*, whether an individual could be convicted of stealing from his or her own joint checking account, was not plain or readily discernable from the statute. In reaching our decision today, we do not hold that the plain error rule may be applied whenever interpretation of a statute may be determined without resort to legislative history. Rather, we continue to adhere to the principle that the rule should be used sparingly. *MacInnes*, 152 N.H. at 736-37.

Nevertheless, when the error is obvious, as in *Taylor* and this case, we will apply it even in the absence of controlling precedent.

Because the sentence was illegal, the third and fourth elements of the rule have also been satisfied. *See Taylor*, 152 N.H. at 721 (imposition of illegal sentence is serious error routinely corrected on plain error review). We therefore vacate the defendant's sentence and remand for resentencing.

Given our conclusion, we need not consider the defendant's remaining argument that RSA 651:2, II-g does not apply to convictions obtained under RSA 159:3.

> *Sentence vacated; remanded for resentencing.*

DUGGAN, GALWAY and HICKS, JJ., concurred; BRODERICK, C.J., concurred specially.

BRODERICK, C.J., concurring specially. I agree that our plain meaning analysis in *State v. Taylor* necessitates our deciding whether a special verdict be given to the jury to determine whether a felon-in-possession conviction subjects a defendant to the penalty enhancement provisions of RSA 651:2, II-g, and I agree with the court's ruling on this issue. However, although I also agree that our decision in *Taylor* leads to the conclusion that the trial court's action was plain error, I write separately to address what I see as an inconsistency in our plain error analysis.

In *Taylor*, the defendant argued that the enhanced penalty statute should not apply to him because the possession/control distinction was not made clear in his underlying indictment. *State v. Taylor*, 152 N.H. 719, 720 (2005). He had not raised this issue at trial, and thus asked that we review it under the plain error doctrine. *Id.* Based upon a plain meaning analysis of RSA 651:2, II-g, we determined that the trial court came to the wrong result. *Id.* at 720-21. We then stated that "this error was plainly evident from comparing the plain language of RSA 651:2, II-g and the indictment," and thus the second prong of the plain error test was met—namely, that the error be plain. *Id.* at 721.

Two weeks later, we decided *State v. Emery*. In that case, the defendant argued that she was privileged to take money from a joint checking account under RSA 637:2, IV. *State v. Emery*, 152 N.H. 783, 786-87 (2005). Because she had not raised this issue at trial, we again did a plain error analysis. *Id.* We stated:

> Generally, when the law is not clear at the time of trial, and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error. *See, e.g.*, 28 MOORE'S FEDERAL

> PRACTICE § 652.04[3], at 652-19 (3d ed. 2002); *United States v. Gilberg*, 75 F.3d 15, 18 (1st Cir. 1996) (court may reverse for plain error only if the error "was or should have been 'obvious' in the sense that the governing law was clearly settled to the contrary"). We have never addressed whether a party to a joint checking account may or may not be convicted of stealing from the other party to the account by making unauthorized withdrawals from it. Thus, we cannot say that the trial court's failure to give an alternative instruction *sua sponte* on theft from joint checking accounts was plain error. *Cf. MacInnes*, 151 N.H. at 737.

*Id.* at 787.

I believe that *Emery* casts doubt upon the plain error analysis we used in *Taylor*. I do not dispute the statutory interpretation in either *Taylor* or today's case. However, in light of our decision in *Emery*, I have a concern with our conclusion that the application of RSA 651:2, II-g by the trial court here "was or should have been 'obvious' in the sense that the governing law was clearly settled to the contrary." *Emery*, 152 N.H. at 787 (quoting *Gilberg*, 75 F.3d at 18).

*Taylor* seems to suggest that a trial court's error will always be "plain" where a statute has a "plain meaning." I do not dispute the conclusion that plain error may have occurred where a statute has a plain meaning. I also recognize that "it is enough that an error be 'plain' at the time of appellate consideration," *Johnson v. United States*, 520 U.S. 461, 468 (1997), and do not suggest that legal questions must have been the subject of appellate review in order to trigger a plain error analysis. However, I believe that *Emery* is inconsistent with the proposition that a plain meaning analysis *necessarily* leads to a conclusion that a trial court's ruling constitutes plain error. Indeed, our reliance upon *Gilberg* in *Emery* indicates that a separate inquiry must occur—namely, whether a statute's meaning is not merely "plain," but also "obvious."

Such a system of review properly requires that parties raise, and therefore preserve, all issues before the trial court. The requirement that parties make specific, contemporaneous objections "is grounded in both judicial economy and common sense, affording the trial court the opportunity to correct an error it may have made, or clearly explaining why it did not make an error." *Berliner v. Clukay*, 150 N.H. 80, 82-83 (2003) (quotations omitted). It grants the proper level of deference to the trial court by establishing a policy that trial court rulings will generally not be overturned where they had neither the benefit of our interpretation,

nor the arguments of the parties, on any given issue. As the Eighth Circuit has explained:

> Usually, for an error to be plain, it must be in contravention of either Supreme Court or controlling circuit precedent. The lack of such precedent, however, does not prevent a finding of plain error if the error was, in fact, clear or obvious based on the materials available to the [trial] court.
>
> In the absence of controlling precedent of either this court or the Supreme Court, the [trial] court is granted more discretion under the plain error standard simply because the less guidance there is, the smaller the realm of decisions that would be clearly or obviously wrong under current law. There is ultimately, however, a limit to what the [trial] court can do, even under plain error review, and, for example, in the statutory construction context, it is possible that the construction of the statute proffered by the [trial] court departs so far from the text that it is clearly incorrect as a matter of law.

*United States v. Lachowski*, 405 F.3d 696, 698-99 (8ᵗʰ Cir. 2005) (citation omitted). It is for these reasons that the plain error rule is to be applied sparingly. *State v. MacInnes*, 151 N.H. 732, 736-37 (2005).

Our plain meaning analysis relies entirely upon a reading of the statute in light of our decision in *Taylor*. The trial court did not have the advantage of either today's interpretation, or that in *Taylor*. Additionally, the defendant not only failed to argue at trial the construction that he puts forward in this case, but he also did not make the argument put forth by the defendant in *Taylor*. Accordingly, I would be inclined to "grant[] more discretion under the plain error standard simply because the less guidance there is, the smaller the realm of decisions that would be clearly or obviously wrong under current law." *Lachowski*, 405 F.3d at 698.

I believe that our plain error analysis in *Taylor* governs the outcome here. Accordingly, I join the court's holding that the sentencing of this defendant was plain error. However, had the State argued that *Emery* established a different test than that which we applied in *Taylor*, I may have reached a different result.